

THE ATTORNEY GENERAL
OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. 0-6687
Re: Effect of tax and valuation re-
duction under provisions of
S. B. 167, 49th Legislature, R.S.

Your recent communication to this department reads
as follows:

"Section 2 of Article I, of S.B. No. 167, an
Act of the 49th Legislature, reads, in part as follows:

"'No school district will be eligible for aid
under the provisions of this Act which has reduced
its tax rate within the two years immediately preced-
ing the year for which aid is applied for hereunder
or which has reduced its tax valuation in order to
show budgetary need.'

"A common school district, which contracts to
a receiving district, has paid all outstanding bonds
for which the second 50 cents on the $100.00 was levied.
Now, the citizens plan to diminish the tax from one
dollar to fifty cents per $100.00. Will this dis-
qualify that district for Equalization Aid under the
new Equalization Aid Law?

"A school district, which has for the last two
years had a 65¢ maintenance tax, has recently voted
a bond issue, which will require a 50¢ bond levy.
This will mean that a school district will use 50¢
on a $1.00 tax for maintenance purposes and 50¢ to
liquidate their bonds. This means a reduction of
15¢ in their local maintenance tax rate, but an in-
crease of 35¢ in their over-all tax levy. Would such
a district be ineligible to receive aid under the
provisions of the Equalization Law quoted above?

"An oil field district, which had a high val-
uation has lost the value due to the depletion of
the oil in the field. Under the provisions of

the Equalization Law quoted above, is such a dis-
trict eligible to receive aid, since it has been
necessary to reduce the values on the real estate
as there is no longer an oil field in the district
to hold up the values?"

Chapter 304, Acts of the 49th Legislature, Regular
Session, listed by Vernon as Article 2784e, repeals Article
2784, Revised Civil Statutes, 1925, after re-enacting its
provisions with the following changes:

Subdivision 1 of Section 1 of Chapter 304, reads
as follows:

"1.   In common school districts, for the
further maintenance of public free schools and
the erection and equipment of school buildings
therein, a special tax; and in independent dis-
tricts for the maintenance of schools therein,
an ad valorem tax not to exceed One Dollar and
Fifty Cents ($1.50) on the one hundred dollars
valuation of taxable property of the district."

In Subdivision 1 of Article 2784, Revised Civil
Statutes, 1925, the corresponding ad valorem tax was fixed at
$1.00.

Subdivision 3 of Section 1 of Chapter 304, reads as
follows:

"3.   The amount of maintenance tax, together
with the amount of bond tax of any district, shall
never exceed One Dollar and Fifty Cents ($1.50) on
the one hundred dollars valuation of taxable property;
and if the rate of bond tax, together with the rate
of maintenance tax voted in the district shall at
any time exceed One Dollar and Fifty Cents ($1.50)
on the one hundred dollars valuation, such bond tax
shall operate to reduce the maintenance tax to the
difference between the rate of the bond tax and One
Dollar and Fifty Cents ($1.50)

In Subdivision 3 of Article 2784, Revised Civil
Statutes, 1925, it was provided that the amount of the main-
tenance tax, together with the amount of the bond tax, should
never exceed one dollar on the hundred dollars valuation.

The fifty-cent maximum rate for bonds, as set forth
in Chapter 304 is the same as set forth in Subdivision 2 of
Article 2784, Revised Civil Statutes, 1925.

Subdivision 4 of Section 1 of Chapter 304, which is identical with Subdivision 4 of said Article 2784, Revised Civil Statutes, 1925, reads as follows:

"4. No tax shall be levied, collected, abrogated, diminished or increased, and no bonds shall be issued hereunder until such action has been authorized by a majority of the votes cast at an election held in the district for such purposes, at which none but property taxpaying qualified voters of such district shall be entitled to vote."

Article 2785, Revised Civil Statutes, 1925, reads in part as follows:

"Before an election is held to determine the proposition of the levy of such tax (maintenance tax) or the issuance of such bonds, a petition therefor, signed by twenty (20) or more, or a majority of those entitled to vote at such election, shall be presented to the County Judge of the county if for a common shcool district, and to the district trustees if for an independent school district. . . . The petition, election order and notice of election shall in all cases either state the specific rate of tax to be voted on or that the rate shall not exceed the limit herein specified. . . ."

Article 2787, Revised Civil Statutes, 1925, which applies to common school bonds, contains, among others, the following provisions:

". . . At the time of the issuance of said bonds and each year thereafter so long as any of said bonds are outstanding, the said court shall levy a bond tax within the limits herein specified to pay the interest on said bonds and redeem the same at maturity. The rate of such tax shall be determined by the trustees of the district and county superintendent and certified by the county superintendent to the commissioners court, and said court shall levy the tax at said rate until a change is recommended by said school officers. Said tax shall be assessed and collected as provided by law for the assessment and collection of special local tax for the maintenance of public free schools. After said bonds shall have been issued and sold and said bond tax has been levied, it shall be unlawful to hold an election in said district to determine whether or not said tax shall be

discontinued or lowered until said bonds, together with the interest thereon, shall have been fully paid, nor shall the limits and boundaries of said common school district ever be decreased by the county board of school trustees until all of said bonds and the accrued interest thereon shall have been fully paid."

Article 2794, Revised Civil Statutes, 1925, applying to changes in common school tax, reads as follows:

"At any time after the expiration of two years after any common school district has levied a school tax on itself, twenty property taxpaying qualified voters, or a majority of such voters in the district, may have an election held, upon the proper petition to the county judge, to determine whether such tax shall be abrogated, increased or diminished. Said election shall be held and conducted as other elections in said district. If the election be to abrogate or diminish the school tax, the ballots shall have written or printed thereon the words: 'For abrogating school tax,' or 'For diminishing school tax to . . . cents;' and 'Against abrogating school tax,' or 'Against diminishing school tax to . . . . cents.' If the election be to determine whether the tax shall be increased, the ballots shall have written or printed thereon the words: 'For increase of school tax' and 'Against increase of school tax.'"

Article 2795, Revised Civil Statutes, 1925, concerning the levy of common school tax, provides in part as follows:

"The commissioners court, at the time of levying taxes for county purposes, shall also levy upon all taxable property within any common school district the rate of tax so voted if a specific rate has been voted; otherwise said court shall levy such a rate within the limit so voted as has been determined by the board of trustees of said district and the county superintendent and certified to said court by the county superintendent. . . ."

In view of the foregoing provisions, your first question is answered as follows:

If, before levying the bond tax of fifty cents, only fifty cents had theretofore been levied for maintenance purposes, then said common school district need not levy over fifty cents for maintenance purposes, and would not be dis-

qualified to receive Equalization Aid under the new law. However, if before levying said fifty-cent bond tax, the district had voted a greater specific maintenance tax than fifty cents, and said greater maintenance tax has not been diminished or increased by a majority vote cast at an election held in the district for said purpose, then said specific maintenance tax must be continued by said district, even though said bonds have been liquidated. (See Subsection 4 of Section 1 of said Chapter 304 and also Articles 2785 and 2795, Revised ( Civil Statutes, 1925).

Likewise, if before levying said fifty-cent bond tax, the district had voted a maximum maintenance tax of more than fifty cents, but not a specific maintenance tax, and the commissioners' court had been levying a greater rate for maintenance purposes, within the limit so voted, as had been determined by the board of trustees of said district and the county superintendent, and certified to said court by the county superintendent, then said maintenance tax so certified must be continued by said district in order to qualify for Equalization Aid, even though said bonds have been liquidated. (See Subsection 4 of Section 1 of said Chapter 304, and also Articles 2785 and 2795, R.C.S., 1925. Also see Opinion No. 0-6768 of this department, a copy of which is attached hereto).

We now answer your second question:

If the school district has voted said fifty-cent bond tax as a specific tax on or since June 4, 1945, the date said Chapter 304 became effective, same would not affect the sixty-five-cent maintenance tax, as from and including said date, $1.50 is now the maximum for all tax purposes. However, if said fifty-cent bond levy was voted prior to June 4, 1945, the provisions of Subdivision 3 of Article 2784, Revised Civil Statutes, (now repealed) would apply. Therefore, by operation of law, and not by reason of any action of the school district, the fifty-cent bond tax reduced the sixty-five-cent maintenance tax to the difference between the rate of bond tax (fifty cents) and one dollar. This would leave the maintenance tax (orginally sixty-five cents), during the time said bond issue was outstanding, to be fifty cents. However, unless said sixty-five-cent maintenance tax is reduced, either by an election or by action of the board of trustees and the county superintendent, as per the provisions of Articles 2794 and 2795, Revised Civil Statutes, 1925, same is by operation of law continued in force and effect when said bonds are liquidated. Also, if the fifty-cent bond tax so voted by the district is a maximum tax and not a specific tax, and such bond tax should be reduced by the trustees of said district and the county superintendent at any time before said bonds have been

finally liquidated, as per Article 2787, then and in such event the maintenance tax will automatically be increased to an amount which represents the difference between the rate of the bond tax and one dollar, but in no event to exceed sixty-five cents. The contents of the preceding sentence are based on the assumption that the sixty-five-cent maintenance tax has not been reduced either by election, if voted as a specific tax, or by action of the board of trustees and the county superintendent, if voted as a maximum tax. (See Arts. 2794 and 2795, R. C. S., 1925).

In view of the foregoing, said district will not become ineligible for Equalization Aid under the provisions of Senate Bill No. 167, 49th Legislature, Regular Session, so long only as its maintenance tax of sixty-five cents is reduced by operation of the bond tax.

Your third question implies and assumes that the valuations of the district were lost as a result of depletion rather than by a reduction in tax valuation by the district in order to show budgetary need. If such is a fact, it obviously follows that such a condition or result would not render such district ineligible to receive aid. Each case in which tax valuation is reduced, will necessitate a determination as to the cause thereof. Where proper investigation results in a determination that such reduced tax valuation has resulted from causes other than by action of the district in order to show budgetary need, such tax reduction will not render the affected district ineligible for aid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/ L. H. Flewellen
   L. H. Flewellen
        Assistant

LHF/JCP/wc
Enclosure-1


APPROVED SEP 28, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/J. F. Chairman